UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X

Hilltop Securities Inc.,

Petitioner,

-v-

Odeon Capital Group LLC,

Respondent.

---------------------------------------- X

26cv4536 (DLC)

OPINION AND ORDER

APPEARANCES:

For petitioner:

Emily M. Knight
Sichenzia Ross Ference Carmel LLP
1185 Avenue of the Americas
26th Floor
New York, NY 10036

Jonathan D. Neerman
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201

For respondent:

Jonathan L. Hochman
Matthew A. Katz
Aaron Haines
Schindler Cohen & Hochman LLP
100 Wall Street
15th Floor
New York, NY 10005

DENISE COTE, District Judge:

Petitioner Hilltop Securities Inc. ("Hilltop") has filed a petition to vacate in part a Financial Industry Regulatory

Authority, Inc. ("FINRA") arbitration award (the "Award") in favor of respondent Odeon Capital Group LLC ("Odeon"). Hilltop seeks to vacate the requirements that it deliver certain bonds to Odeon and pay Odeon's attorneys' fees.

Odeon has cross-petitioned for confirmation of the Award. For the following reasons, the Award is confirmed and Hilltop's petition to vacate the Award is denied.

**Background**

The underlying dispute arises out of a bond transaction that began on January 5, 2023, when the hedge fund Clear Haven Capital Management, LLC ("Clear Haven") agreed to purchase $30 million face value of BSABS 2006-IM1 A7 residential mortgage-backed securities certificates (the "Bonds") from Odeon. Odeon, which is an investment bank and broker-dealer, acted in the transaction as a "riskless principal" on behalf of a third-party seller. The trade settled at approximately 8:00 a.m. on January 10. The Bonds were delivered to Clear Haven through its prime broker, J.P. Morgan Securities LLC ("JPM"), in return for a payment from Clear Haven of approximately $2,843,253.61, hereinafter referred to as $2.8 million.

Later that morning, Clear Haven told Odeon that there had been a revised report from the Bonds' Trustee, writing the

payout expectations on the Bonds back to their pre-December 19, 2022 level of zero and rendering the Bonds "worthless." Having found itself on the losing end of a trade, Clear Haven sought to get its money back.

Clear Haven caused JPM to issue a "security payment order" ("SPO") to Hilltop, which provided back-office clearing and settlement services for Odeon's custodial business and non-custodial institutional equities business. The SPO sought repayment to Clear Haven of the $2.8 million it had sent to purchase the Bonds. Apparently in the face of significant pressure, and contrary to appropriate business practices, Hilltop issued the SPO on January 10. Hilltop then issued a corresponding SPO to Odeon seeking $2.8 million, which Odeon refused to pay. Clear Haven therefore walked away from the trade with the Bonds as well as the money it had paid for them. In 2023, Hilltop pursued litigation against Clear Haven for unjust enrichment and other claims but later voluntarily dismissed that litigation.

On March 7, 2023, following what Hilltop described as a "review" of Odeon's business, Hilltop substantially increased Odeon's clearing deposit requirement. Odeon funded the increased deposit on March 13, 2023, but made arrangements to transfer its business to another clearing broker, and on April

24, 2023, informed Hilltop that it would not renew the parties' Fully Disclosed Clearing Agreement ("Agreement"), which governed their relationship.

On August 22, Odeon requested that Hilltop release $2,150,000 from its clearing deposit. On August 29, Hilltop told Odeon it was exercising its right under the Agreement to "offset" amounts "owed" by Odeon. Hilltop therefore claimed $2.8 million from Odeon's clearing deposit. Hilltop also told Odeon that it would retain an additional $700,000 from the clearing deposit for "future legal fees that may arise from any dispute between Hilltop and Odeon pursuant to Sections 12.4 and 14.7" of the Agreement.[1]

On February 21, 2024, Odeon filed a claim for arbitration against Hilltop with FINRA Dispute Resolution Services pursuant to the parties' Agreement. The Agreement, which the parties had entered in August 2019, contains an arbitration clause in § 20 providing that "all controversies" between the parties shall be arbitrated before the New York Stock Exchange or FINRA. The

[1] Section 12.4 provides that in connection with any claim for indemnification, Hilltop may, in its discretion, "reserve and retain any money, securities or other property" held in Odeon's clearing deposit account pending a determination of the claim. Section 14.7 provides that Odeon will reimburse Hilltop for legal fees Hilltop may incur in complying with "any request by a court, or Financial Regulatory Authority for any documents, papers or data in any form pertaining to any matters relating to this Agreement."

clause specifies that "nothing contained herein shall limit the ability of the arbitrators to make an award under the rules of the arbitration forum and applicable law," and further provides that "judgment upon the award of the arbitrators may be entered in any court, state or federal, having jurisdiction." The Agreement provides that "the arbitrators' award is not required to include factual findings or legal reasoning."

In the arbitration, Odeon asserted claims for conversion, breach of contract, breach of the implied covenant of good faith and fair dealing, money had and received, fraud, and breach of fiduciary duty in connection with Hilltop's seizure of the funds in its clearing deposit account. Odeon sought, inter alia, $3,543,253.00 in compensatory damages, punitive damages, attorneys' fees, and any other relief the panel deemed equitable and just. Hilltop filed its answer on April 19, 2024, and asserted several affirmative defenses. The parties each filed pre-hearing submissions. In its pre-hearing submission, Hilltop requested that "the Panel deny [Odeon's] claims against Hilltop in their entirety and award Hilltop its reasonable attorneys' fees and all costs associated with this arbitration," and subsequently identified its lead attorney as the witness on its claim for attorneys' fees.

The arbitration was heard over the course of 22 hearing days between March 31, 2025 and March 13, 2026. Following the parties' closing arguments on liability, the panel heard argument and took briefing on whether attorneys' fees could be appropriately awarded to Odeon.

On April 23, 2026, the three-member arbitration panel issued the Award. The panel dismissed Odeon's claim for lost profits and loss of revenue, but denied Hilltop's motion to dismiss the remainder of Odeon's claims. The panel explained that "[a]fter considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions," it decided "in full and final resolution of the issues submitted for determination" that Hilltop owed Odeon $748,000.00 in compensatory damages plus interest. The panel also ordered that within 60 days from the date of the Award, Hilltop must "return $30 million face value of BSABS 2006-IMI A7 bonds to [Odeon] without any payment by [Odeon]." Finally, the panel held that Hilltop

> is liable for and shall pay to [Odeon] the sum of $1,988,000.00 in attorneys' fees pursuant to New York law. The Panel has determined that an award of attorneys' fees is appropriate under the facts of this case. The Panel finds such legal basis for attorneys' fees provided by the terms of the clearing agreement and the legal authorities cited by [Odeon] in its closing submissions.

On May 29, 2026, Hilltop filed a petition to vacate the Award to the extent it directed that it pay Odeon $1,988,000.00 in attorneys' fees and return $30 million face value of the Bonds to Odeon. On July 3, Odeon filed its opposition and cross-petitioned for confirmation of the Award. The briefing was fully submitted on August 7.

## **Discussion**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." Hall Street Assocs. L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008).[2] "The review of arbitration awards is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." Beijing Shougang Mining Inv. Co. v. Mongolia, 11 F.4th 144, 160 (2d Cir. 2021) (citation omitted). "Under the FAA, courts may

[2] The FAA "does not itself create federal jurisdiction." Jules v. Andre Balazs Props., 608 U.S. 200, 205 (2026) (citation omitted). Thus, a federal court must have an "independent jurisdictional basis for granting FAA relief." Id. (citation omitted). Because Hilltop is a Delaware corporation with its principal place of business in Texas, and Odeon is an LLC with both members being citizens of New York, and more than $75,000, exclusive of interest and costs, is at stake, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

vacate an arbitrator's decision only in very unusual circumstances." Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 568 (2013) (citation omitted).

Section 10(a) of the FAA sets forth four situations in which a court may vacate an arbitration award: those "involving fraud[] [or] corruption, partiality, misconduct, or imperfect execution or exceeding of arbitral powers." Seneca Nation of Indians v. New York, 988 F.3d 618, 625 (2d Cir. 2021). As relevant here, "[t]he scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission." Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987) (citation omitted). As such, an arbitral body exceeds its powers under § 10(a)(4) where it considers issues "beyond those the parties have submitted" for its consideration or reaches "issues clearly prohibited by law or by the terms of the parties' agreement." Jock v. Sterling Jewelers, Inc., 646 F.3d 113, 122 (2d Cir. 2011).

The Second Circuit has "held that as judicial gloss on the specific grounds for vacatur of arbitration awards in the FAA, an arbitrator's manifest disregard of the law or of the terms of the arbitration agreement remains a valid ground for vacating arbitration awards." Seneca Nation, 988 F.3d at 625 (citation

omitted). A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law, however, "bears a heavy burden, as awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." Id. at 625-26 (citation omitted). Such impropriety requires "more than error or misunderstanding with respect to the law, or an arguable difference regarding the meaning or applicability of laws urged upon an arbitrator." T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010) (citation omitted). Instead,

> A court may vacate an arbitral award on this ground only if the court finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.

Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 589 (2d Cir. 2016) (citation omitted).

In short, an award "should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." T. Co Metals, 592 F.3d at 339 (citation omitted). "With respect to contract interpretation, this standard essentially bars review of whether an arbitrator misconstrued a contract." Id.

As explained below, Hilltop has failed to carry its significant burden of showing that the challenged portions of the Award exceeded the panel's authority or that the panel acted in manifest disregard of the law. Accordingly, its petition to vacate two portions of the Award must be denied.

I. The Directive to Deliver the Bonds

Hilltop seeks to vacate the panel's order that it return $30 million face value of the Bonds to Odeon. Hilltop argues that doing so violates public policy because it is impossible, as a factual matter, for it to comply with the directive. Hilltop asserts that it is impossible because it does not currently possess the Bonds and cannot easily obtain them.

While a court may refuse to enforce an arbitration award because the award violates public policy, Hilltop has not shown that the arbitration panel direction that it return the Bonds requires it to violate any public policy. A court may deny enforcement of an award on public policy grounds "only when such enforcement would violate some explicit public policy that is well defined and dominant" as "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824-25 (2d Cir. 1997) (citation omitted). Moreover, New York law, on which Hilltop relies, excuses a

party's performance of its obligations under the doctrine of impossibility only, as relevant here, when performance is "objectively impossible." Kel Kim Corp. v. Cent. Markets, Inc., 70 N.Y.2d 900, 902 (N.Y. 1987). See Siemens Energy, Inc. v. Petróleos de Venezuela, S.A., 82 F.4th 144, 153 (2d Cir. 2023) (same). Further, the doctrine does not bar recovery by an injured party when a "predicament" could have been "foreseen and guarded against." Kel Kim Corp., 70 N.Y.2d at 902 (citation omitted).

Hilltop has not shown that it is impossible for it to obtain the Bonds and return them to Odeon. Its argument that it does not currently possess the Bonds and that Clear Haven has refused its request for them does not show that it is impossible for Hilltop to obtain them. In its reply brief, Hilltop expands on its impossibility argument and explains that the Bonds are not liquid, fungible securities and that it has no practical means of locating counterparties to execute a purchase of the Bonds. This is also insufficient to establish impossibility. It appears that the panel wished to return the parties to their original positions, with Clear Haven in possession of its money and Odeon in possession of the Bonds.[3] That Hilltop -- a

[3] During the hearing the panel's chairperson asked a Hilltop witness to confirm his understanding that if the bond trade had been cancelled altogether, the money paid for the Bonds would

sophisticated provider of execution and clearing services -- may find it expensive or even difficult to obtain the Bonds does not establish that it is impossible for it to do so. Accordingly, Hilltop's request that it be excused from complying with this portion of the Award is denied.

II. The Attorneys' Fees Award

Hilltop also seeks to vacate the award of attorneys' fees to Odeon, principally arguing that the arbitration panel manifestly disregarded the American Rule that each party bears its own attorneys' fees, as codified in § 7513 of New York's Civil Procedure Law and Rules ("C.P.L.R."). This argument fails.

Where an arbitration clause is broad, as it is here, "arbitrators have the discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself." Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 902 (2d Cir. 2015) (citation omitted). "It is not the role of the courts to undermine the comprehensive grant of authority to arbitrators by prohibiting them from fashioning awards or remedies to ensure a

---

have gone back to Clear Haven, and the Bonds would have been returned to Odeon. The chairperson wondered why the remedy in "a situation like this" was not to "bust the trade and revert everybody back to square one."

meaningful final award." Id. (citation omitted). Indeed, "arbitrators are generally afforded greater flexibility in fashioning remedies than are courts." Id.

The Second Circuit has repeatedly applied this principle in the context of attorneys' fees to hold that a broadly-worded arbitration clause imbues arbitrators with the inherent power to authorize attorneys' fees. In PaineWebber Inc. v. Bybyk, it held that a broadly-worded clause that contains "no express limitation with respect to attorneys' fees" permits parties to submit their claims for attorneys' fees to arbitration -- even where the contract's choice-of-law provision selects a state (there, New York) that imposes substantive barriers to the imposition of attorneys' fees in connection with arbitration. 81 F.3d 1193, 1202 (2d Cir. 1996).[4] See also ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co., 564 F.3d 81, 86, 88 (2d Cir. 2009) (arbitrators may impose attorneys' fees as a sanction for participating in an arbitration in "bad faith" even when the arbitration agreement adopted the American Rule).

[4] In Mastrobuono v. Shearson Lehman Hutton, Inc., the Court concluded that an arbitration clause -- which, as here, provided that "any controversy" arising out of transactions between the parties "shall be settled by arbitration" -- was sufficiently broad to contemplate a remedy of punitive damages, notwithstanding relevant state law that prohibited arbitral awards of punitive damages. 514 U.S. 52, 59, 64 (1995).

The clause at issue here is the paradigm of a broad arbitration clause. It requires arbitration for "all controversies" that may arise between Odeon and Hilltop. See Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995) (a clause that submits to arbitration "any claim or controversy arising out of or relat[ed] to the agreement" is "the paradigm of a broad clause"). Because the arbitration provision here is broad and contained no limitation on the arbitrators' remedial powers, the panel had inherent authority to award attorneys' fees. See PaineWebber, 81 F.3d at 1202; see also, e.g., LiveWire Ergogenics, Inc. v. JS Barkats PLLC, 645 F. Supp. 3d 290, 300 (S.D.N.Y. 2022) (collecting cases holding that, pursuant to PaineWebber, C.P.L.R. § 7513 "does not prohibit an arbitrator in New York from granting an award of attorneys' fees when such an award is otherwise within the arbitrator's powers").

The text of the Award confirms that the arbitrators acted well within their "discretion to order remedies they determine appropriate." Benihana, 784 F.3d at 902 (citation omitted). In the Award, the panel explained that an award of attorneys' fees to Odeon "is appropriate under the facts of this case," and that it found the "legal basis" for the award in the terms of the Agreement and the legal authorities cited by Odeon. In its

submissions, Odeon presented several legal bases in support of its request for attorneys' fees, including the argument that the broad text of the arbitration clause encompassed the power to award attorneys' fees.[5]

In support of its motion to vacate the award of attorneys' fees, Hilltop argues primarily that the award manifestly disregarded New York law. Hilltop contends that the panel disregarded C.P.L.R. § 7513, which codifies the American Rule that parties' generally bear their own attorneys' fees in the context of arbitration. Section 7513 states that "[u]nless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including attorney's fees, incurred in the conduct of the arbitration, shall be paid as provided in the award." N.Y.

[5] During oral argument on the issue of attorneys' fees, Odeon asserted that the panel had authority to award attorneys' fees pursuant to the broad powers afforded to the arbitrators in the Agreement's arbitration provision; FINRA Dispute Resolution rules; or § 12.2 of the Agreement, an indemnification provision that contemplates attorneys' fees. Odeon also argued that fees were authorized under New York and Texas law, and that Hilltop's initial request for attorneys' fees evidences a mutual understanding that fees were authorized. In its post-hearing brief, Odeon argued that the panel had the authority to award fees because (1) Hilltop's conduct illustrated that it believed the indemnification provision of the Clearing Agreement authorized attorneys' fees, (2) the broad text of the arbitration clause empowered the panel to award fees, as confirmed by, inter alia, PaineWebber, and (3) FINRA rules authorize attorneys' fees.

C.P.L.R. § 7513. According to Hilltop, because none of the exceptions to § 7513 apply here, the panel's award of attorneys' fees was unauthorized.

Hilltop's argument fails for several reasons. First, New York law is not the governing law. As explained above, the arbitrators had broad authority to award attorneys' fees under federal law, which governs here and was cited to them by Odeon.

Hilltop's argument faces another considerable hurdle. Hilltop acknowledged orally and in its post-hearing brief that the arbitrators had the authority and discretion to award attorneys' fees.[6] Indeed, Hilltop itself had requested an award of attorneys' fees from the arbitrators in its pre-hearing brief, although it withdrew that request later in the proceedings. Moreover, Hilltop did not specifically refer to C.P.L.R. § 7513 in arguing to the arbitrators that New York law forbids such an award. Hilltop therefore forfeited its right to rely on § 7513 in this petition to vacate the award of attorneys' fees. See Seneca Nation, 988 F.3d at 626.

---

[6] During oral argument on the issue of attorneys' fees, Hilltop's counsel confirmed that the panel "certainly" had the right to decide that the typical presumption that each side pays its own fees should not be followed, but contended that doing so was not appropriate here. Hilltop's post-hearing brief likewise acknowledged that "FINRA arbitration panels retain discretion to award attorneys' fees."

Finally, Hilltop argues that the amount of attorneys' fees awarded is "disproportionate" to the amount awarded to Odeon in compensatory damages. That argument also fails. First, the Award was not limited to compensatory damages; it included as well interest on those compensatory damages and the requirement that Hilltop deliver the Bonds to Odeon. Second, Hilltop does not suggest that the amount of the attorneys' fees awarded is per se unreasonable. After all, at the arbitration, Hilltop disclosed that its own attorneys' fees were even higher than the amount awarded here. Finally, although the arbitrators were under no obligation to explain their reasons for the Award, see D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006), they noted that the attorneys' fees were awarded as "appropriate under the facts of this case." That was more than sufficient to justify the award of attorneys' fees. See Benihana, 784 F.3d at 902.

## **Conclusion**

Hilltop's May 29, 2026 petition to partially vacate the FINRA panel's Award is denied and Odeon's July 3 cross-petition to confirm the Award is granted. The Clerk of Court will close

this case.

Dated: New York, New York
September 25, 2026

DENISE COTE
United States District Judge